The State v. Bailey.

. No. 22,740.

THE STATE OF KANSAS, *Appellee*, v. CHARLES E. BAILEY, *Appellant*.

SYLLABUS BY THE COURT.

1. MANSLAUGHTER—*Death from Culpable Negligence in Driving Automobile—Within Operation of Statute Defining Manslaughter in Fourth Degree*. The operation of the statute punishing as manslaughter the involuntary killing of another by means of the culpable negligence of the offender extends to a case where death results from the negligent operation of an instrumentality invented subsequent to the enactment. ͵

2. SAME—*Limiting Speed of Automobiles Within Police Power of State*. A statute limiting the speed of automobiles on city streets to twelve miles an hour is within the police power of the state.

3. SAME—*Information—Not Bad for Repugnancy*. A conviction of manslaughter in the fourth degree, alleged to have been committed by the defendant's running into the person killed while driving an automobile at an unlawful speed, will not be set aside because of the overruling of a motion to quash the information for repugnancy based on the ground that it contained an allegation that the act was willful as well as that it was the result of negligence.

Appeal from Cherokee district court; FRANK W. BOSS, judge. Opinion filed November 6, 1920. Affirmed.

*E. B. Morgan,* of Galena, *C. A. McNeill,* and *Leo Armstrong,* both of Columbus, for the appellant.

*Richard J. Hopkins,* attorney-general, *Don H. Elleman,* county attorney, *L. M. Resler,* deputy county attorney, *C. B. Skidmore, A. H. Skidmore,* and *A. A. Skidmore,* all of Columbus, for the appellee.

The opinion of the court was delivered by

MASON, J.: Charles E. Bailey was convicted of manslaughter in the fourth degree, and appeals on the ground that the information was defective and that his motions to quash it, to deny the admission of evidence thereunder, and in arrest of judgment should have been sustained.

The information was drawn in three counts, but as the third contained substantially everything that was in the other two

it alone need be considered.   Omitting the formal portions it charged that the defendant did—

"Unlawfully, feloniously, willfully, knowingly, negligently and with culpable negligence run, drive, operate and manage a certain motor vehicle, to wit: An Overland 90 automobile on East Main street within the city of Weir, in said county and state at a rate of speed greater than 12 miles an hour, and at a rate of speed greater than is reasonable and proper having regard for the traffic and use of the road and condition of the road and at a rate of speed such as to endanger the life and limb of any person then and there being, and he, the said Charles E. Bailey, then and there operating the said automobile as aforesaid, did then and there unlawfully, willfully, knowingly, negligently, feloniously and with culpable negligence, run against, upon and over one Geraldine Ransom, then and there being, whereby the said Geraldine Ransom was then and there thrown with great force and violence upon the ground and divers mortal wounds, bruises, and contusions then and there and thereby inflicted upon the head and body of her, the said Geraldine Ransom, of which mortal wounds, bruises and contusions, the said Geraldine Ransom then and there died, the death of her, the said Geraldine Ransom, as aforesaid, then and there being caused by the act, procurement and culpable negligence of him, the said Charles E. Bailey, as aforesaid."

The conviction was had under the section of the statute reading as follows:

"Every other killing of a human being, by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this article to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree."   (Gen. Stat. 1915, § 3388.)

Involuntary manslaughter at the common law is thus defined:

"Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty."   (21 Cyc. 760.)

The information did not charge manslaughter in the first degree under section 3373 because that requires a killing that would be murder at the common law, which would involve malice aforethought (21 Cyc. 703) which was not alleged.

1. In behalf of the defendant it is urged that at the time of the enactment of the section quoted neither the automobile nor the automobile law was in existence and that the legislature could not then have had in mind a police regulation mak-

ing it a misdemeanor to drive such a vehicle faster than at a specified rate. The legislature defined the offense in general terms and there was no necessity that it should have had in contemplation at the time all the ways in which the conditions of the definition might be met.

2. It is also urged that the statute limiting the speed of automobiles within a city or village to twelve miles an hour (Laws 1917, ch. 74, § 5) is invalid because it is practically prohibitory of their use and therefore violative of the fourteenth amendment to the federal constitution. It is clearly within the province of the legislature to regulate the speed of vehicles upon public highways, and it certainly cannot be said that a limit of twelve miles an hour as applied to city streets is so low as to be beyond the police power of the state. The proposition is so obvious as not to require discussion or the citation of authorities. Decisions in point however are not lacking. (Berry on Automobiles, 2d ed., § 38; Huddy on Automobiles, 5th ed., §§ 230, 729.)

3. The principal ground upon which a reversal is asked is that the information should have been quashed because its statements are inconsistent with each other in that it alleges that the killing was intentional and also that it was due to the defendant's negligence—that it charges in the same count both voluntary and involuntary manslaughter. The suggestion that an intentional killing is charged grows out of the use of the words "willfully" and "knowingly" in the information. These terms are applied however to the defendant's driving the automobile at an unlawful speed or at the most to his so guiding it that it struck the person who was fatally injured. A fair reading of the information does not warrant the conclusion that the defendant was charged with a purpose to kill. But even if that were the case the allegation of intentional killing could be rejected as immaterial. It would not without further addition cause the information to charge manslaughter under any other section than that quoted, or form a material part of a charge under that section because to constitute voluntary manslaughter at the common law the killing must have been in a sudden heat of passion. (21 Cyc. 736.) No information may be quashed "for any surplusage or repugnant allegation,

when there is sufficient matter alleged to indicate the crime and person charged." (Crim. code, § 110, Gen. Stat. 1915, § 8024, subdiv. 6.) There is no difficulty in understanding from the information the character of the acts complained of.

The defendant places much reliance upon *The State v. Lockwood,* 119 Mo. 463. There an indictment for manslaughter by shooting was quashed for repugnancy because it alleged that the killing was done willfully and also that it was done with culpable negligence. While entertaining the greatest respect for the supreme court of Missouri we have heretofore declined to follow its lead in the application of the criminal law (*The State v. Hinchman,* 74 Kan. 419, 87 Pac. 186) even with respect to the interpretation of a statute borrowed from that state. (*The State v. Campbell,* 73 Kan. 688, 85 Pac. 784.)

However the Missouri case referred to came up in such a way that it might well be governed by different principles from those here involved. There the trial court sustained the motion to quash and the supreme court affirmed the ruling. The decision in its practical effect merely required the prosecution to procure a new indictment, electing therein to stand upon one or the other of the inconsistent theories. Here the defendant has been convicted of manslaughter in the fourth degree upon a charge of which an intent to kill forms no essential part, even if it is to be read into the information. He could have suffered no possible prejudice from the insertion of the word "willfully," irrespective of the correctness of the ruling complained of. Just as a reversal should not be ordered because of the giving of an erroneous instruction concerning a higher degree of the offense than that of which a defendant has been convicted (17 C. J. 348), or because of error in overruling a motion to quash a different count from that on which conviction was had (17 C. J. 285), there is no occasion for setting aside the judgment by reason of repugnancy resulting from the presence of allegations appropriate to a graver offense than that on which the verdict of guilty was based.

The judgment is affirmed.